STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-637

RONALD JOSEPH MCDOWELL
AND ANNA MARTHA MCDOWELL

VERSUS

PRIMEAUX LANDZ[,]LLC,
HARLEY RONALD HEBERT[,] AND
DEBRA ANN BILLEDEAUX HEBERT

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-3449
HONORABLE DAVID RITCHIE, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.,*
Judges.

**REVERSED AND RENDERED.**

**Cecil R. Sanner**
**4830 Lake Street**
**Lake Charles, Louisiana 70605**
**(337) 478-5208**
**Counsel for Plaintiffs/Appellants:**
    **Ronald Joseph McDowell and**
    **Anna Martha McDowell**

**David F. Dwight**
**1400 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 439-3138**
**Counsel for Defendants/Appellees:**
    **Primeaux Landz, LLC,**
    **Harley Ronald Hebert, and**
    **Debra Ann Billedeaux Hebert**

_____

    *Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana
Supreme Court as Judge Pro Tempore.

**GENOVESE, Judge.**

The Plaintiffs, Ronald Joseph McDowell and Anna Martha McDowell, appeal the trial court's denial of their motion for summary judgment and the granting of summary judgment in favor of the Defendants, Primeaux Landz, LLC, Harley Ronald Hebert, and Debra Ann Billedeaux Hebert. For the following reasons, we reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute over the effect of building restrictions in a subdivision located on Highway 14 near Lake Charles, Louisiana, in Calcasieu Parish. The area now comprising the subdivision was at one time owned, in its entirety, by Defendant, Primeaux Landz, LLC (Primeaux Landz). In 2004, Primeaux Landz divided the acreage into eleven individual lots, naming the development Creole Key Subdivision. On January 23, 2004, Primeaux Landz filed a document entitled the Creole Key Subdivision Restrictive Covenants[1] into the conveyance records of Calcasieu Parish. The building restrictions provided, in relevant part: "All lots must be used for the construction of <u>one</u> (no more than one) single-family dwelling for residential purposes only. . . . No commercial activities will be permitted. . . ."[2] It also provided for supplement to or amendment of the building restrictions by either "the architectural control committee composed of the undersigned subdivision developers or written approval of 51% of the lot owners in the subdivision." On October 27, 2004, Mr. and Mrs. McDowell purchased lot nine in Creole Key

---

[1]Throughout this opinion, the Creole Key Subdivision Restrictive Covenants will be referred to as "building restrictions."

[2]The building restrictions contained a single exception to the prohibition against commercial activity: "These Creole Key Subdivision Restrictive Covenants **do not apply** to lot (11) eleven, which is a [c]ommercial lot at the [e]ast end of the subdivision (on plat, bordering Highway 14)."

1

Subdivision from Primeaux Landz.

On August 1, 2005, Primeaux Landz filed another set of building restrictions affecting Creole Key Subdivision into the conveyance records of Calcasieu Parish. This set of building restrictions did not contain a provision prohibiting commercial activities on any of the lots in Creole Key Subdivision and was signed only by the architectural control committee. On August 4, 2005, Defendants, Mr. and Mrs. Hebert, purchased lot ten in Creole Key Subdivision from Primeaux Landz. In May of 2006, Mr. and Mrs. Hebert began operating a beauty salon from their residence, lot ten, in Creole Key Subdivision.

On June 15, 2007, Mr. and Mrs. McDowell filed a Petition for Permanent Injunctive Relief, Invalidation of Restrictive Covenants, and to Terminate Commercial Activity. Mr. and Mrs. McDowell's petition prayed for a judgment invalidating the building restrictions which were recorded by Primeaux Landz on August 1, 2005. Mr. and Mrs. McDowell asserted that the building restrictions filed on January 23, 2004 did not contain "express language . . . which authorized the termination of the commercial activity provision[;]" therefore, citing La.Civ.Code art. 780, Mr. and Mrs. McDowell urged that the filing of the building restrictions on August 1, 2005 by Primeaux Landz, which excluded a prohibition against commercial activity in Creole Key Subdivision, was an improper termination of the building restrictions filed on January 23, 2004. Mr. and Mrs. McDowells' petition prayed for a judgment invalidating the building restrictions filed on August 1, 2005, reinstating the original building restrictions filed on January 23, 2004, and enjoining Mr. and Mrs. Hebert from operating a beauty salon on their property in Creole Key Subdivision.

2

On July 17, 2007, the Defendants answered Mr. and Mrs. McDowell's suit denying the allegation that the building restrictions filed on August 1, 2005 terminated the prohibition against commercial activities. Additionally, in the alternative, the Defendants' answer asserted that they had:

> recently filed an amendment[3] to the original restrictive covenants . . . . The amendment provides for one single dwelling, for residential purposes only, to be constructed on one lot but provides for a provision for the owners of lot [ten] to have a beauty shop located in their home by the land/home owner and are not allowed to have any employees of the business besides the land/home owner.

The Defendants filed a Motion for Summary Judgment on September 25, 2007, wherein they acknowledged that "Primeaux Lands, LLC did in fact change the building restrictions in August of 2005 without consulting with an attorney. Primeaux Landz, LLC without knowledge of the laws on building restrictions deleted the portion of the original covenants which prohibited commercial activity on the property." However, the Defendants asserted that, after becoming aware of the lawsuit filed by Mr. and Mrs. McDowell, they "remedied the plaintiff's [sic] sole cause of action." The Defendants asserted that the Second Amendment to Creole Key Subdivision Restrictive Covenants, filed on July 16, 2007, and executed by the architectural committee and fifty-one percent of the lot owners, complied with the covenants in the original building restrictions and La.Civ.Code art. 780. According to the Defendants, the building restrictions filed on July 16, 2007, simply amended the original building restrictions filed on January 23, 2004, and, thus, the Defendants had corrected any error resultant from the filing of the building restrictions filed on

---

[3]The recent amendment to which the Defendants refer is a document entitled Second Amendment to Creole Key Subdivision Restrictive Covenants which was filed into the conveyance records of Calcasieu Parish on July 16, 2007, and which was signed by the architectural control committee and the owners of lots two, three, four, six, seven, and ten in Creole Key Subdivision.

August 1, 2005. Therefore, Defendants moved for summary judgment asserting that they were entitled to judgment dismissing Mr. and Mrs. McDowell's suit.

Mr. and Mrs. McDowell also filed a Motion for Summary Judgment on November 27, 2007. Mr. and Mrs. McDowell asserted that they purchased lot nine on October 27, 2004, in Creole Key Subdivision with the understanding that, except for lot eleven which was owned by Primeaux Landz and on which commercial activity was allowed, there was to be no other lot in Creole Key Subdivision on which commercial activity would be allowed. According to Mr. and Mrs. McDowell, the Defendants improperly terminated the subdivision's restriction against commercial activity through both the second version of the building restrictions filed on August 1, 2005, and the third version of the building restrictions filed on July 16, 2007.

A hearing on the parties' cross-motions for summary judgment was held on January 4, 2008, after which the trial court ruled that "it [found] this to be an amendment and not a termination, especially because it is so narrowly drawn to just allow for a beauty shop by the homeowner because this is a home based business." A formal judgment was signed by the trial court on March 6, 2008, granting the Motion for Summary Judgment filed by the Defendants and denying the Motion for Summary Judgment filed by Mr. and Mrs. McDowell. Mr. and Mrs. McDowell appeal.

## ASSIGNMENTS OF ERROR

Mr. and Mrs. McDowell contend that:

1.  The [t]rial [c]ourt erred in granting the Motion for Summary Judgment in favor of the Defendants;

2.  The [t]rial [c]ourt erred in not granting the Motion for Summary Judgment in favor of the Plaintiffs; and

4

3.    Alternatively, the [t]rial [c]ourt should have denied both Motion for Summary Judgment and ordered this matter for trial in an ordinary proceeding.

## STANDARD OF REVIEW

The governing jurisprudence relative to a motion for summary judgment and our appellate standard of review thereof have recently been reiterated by our supreme court as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363[,] p. 3 (La.11/29/06), 950 So.2d 544, 546, see [La.Code Civ.P.] art. 966.[4]  A

---

[4][Louisiana Code of Civil Procedure Article] 966 provides:

A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.

(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.

B. The motion for summary judgment and supporting affidavits shall be served at least fifteen days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least eight days prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.

(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no

summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181[,] p. 17 (La.3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337[,] p. 7 (La.10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424[,] p. 5 (La.4/14/04), 870 So.2d 1002, 1006.

*Samaha v. Rau,* 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83.

## DISCUSSION

Louisiana Civil Code Article 780 provides (emphasis added):

Building restrictions may be amended, whether such amendment lessens or increases a restriction, or may terminate or be terminated, *as provided in the act that establishes them*. In the absence of such provision, building restrictions may be amended or terminated for the whole or a part of the restricted area by agreement of owners representing more than one-half of the land area affected by the restrictions, excluding streets and street rights-of-way, if the restrictions have been in effect for at least fifteen years, or by agreement of both owners representing two-thirds of the land area affected and two-thirds of the owners of the land affected by the restrictions, excluding streets and street rights-of-way, if the restrictions have been in effect for more than ten years.

As stated by the trial court at the hearing on the parties' motions for summary judgment, "[t]he issue is termination versus amendments." If the allowance of commercial activity on lot ten, owned by Mr. and Mrs. Hebert, is considered to be a termination of the building restrictions filed on January 23, 2004, then the subsequent building restrictions filed on August 1, 2005 and July 16, 2007 do, in fact, violate

genuine issue of material fact.

D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.

E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.

La.Civ.Code art. 870. Conversely, if said allowance is considered to have simply been an amendment to the original building restrictions, then the subsequent building restrictions are proper.

In their appellate brief, Mr. and Mrs. McDowell argue that the original building restrictions did not authorize Primeaux Landz to terminate the prohibition against commercial activity which, they contend, is exactly what occurred when said prohibition was removed in order to allow Mr. and Mrs. Hebert to operate a beauty salon on their lot in Creole Key Subdivision. Mr. and Mrs. McDowell further assert that the trial court erred in concluding that the removal of said prohibition equated to an amendment of the building restrictions rather than a termination of the original building restrictions.

Mr. and Mrs. McDowell cite *Woodward v. Cutrer*, 02-423 (La.App. 3 Cir. 2/5/03), 838 So.2d 180, *writ denied*, 03-650 (La. 5/2/03), 842 So.2d 1106, in support of their position. In *Woodward*, the developer of a subdivision brought suit to enjoin the Cutrers after they began construction of a pier and boathouse. The building restrictions mandated that the Cutrers obtain the developer's permission prior to any new construction. The Cutrers, along with a majority of the subdivision's property owners, attempted to amend the building restrictions, removing that portion of the building restrictions requiring the developer's prior approval of new construction plans. Similar to the case *sub judice*, in *Woodward*, the building restrictions did not contain a provision for termination of the subdivision's building restrictions, only for their modification or amendment. As in the case at bar, the issue in *Woodward* was whether the removal of the prior approval of the developer requirement equated to an amendment to or a termination of the building restrictions. This court held that the

7

provision concerning amendments to restrictions did not apply to termination of building restrictions. Quoting *Mackey v. Armstrong*, 30,054, p. 2 (La.App. 2 Cir. 12/30/97), 705 So.2d 1198, 1199, this court declared "[t]ermination and amendment of building restrictions are generally different and distinct matters." *Woodward*, 838 So.2d at 185.

The Defendants, in brief, assert that *Woodward* is neither supportive of the arguments furthered by Mr. and Mrs. McDowell nor analogous to the case at bar. We disagree. Were the Defendants allowed to amend the subdivision's building restrictions once, the Defendants could do so again and again until commercial activity was allowed on all of the lots in Creole Key Subdivision. In fact, the trial court recognized this possibility and posed that very question; however, the trial court ruled against Mr. and Mrs. McDowell and ruled in favor of the Defendants.

Based on our *de novo* review, we find the trial court's determination that the changes made to the building restrictions were, in essence, amendments and not a termination of said building restrictions to be erroneous. When Mr. and Mrs. McDowell purchased their property, no commercial activity was allowed in the subdivision except for lot eleven which was excluded from the original building restrictions. Defendants' alleged "amendment" allowing commercial activity constituted a change in the overall plan of the subdivision. It is undisputed that the operation of a beauty shop by Mr. and Mrs. Hebert constituted commercial activity which was prohibited by the original building restrictions. Allowing the amendment, which would permit Mr. and Mrs. Hebert to conduct commercial activity on their premises, is tantamount to a termination of the prohibition in the building restrictions against commercial activity on the property in question. Changing the status of

8

subdivision property from residential to commercial is the termination of a building restriction, not an amendment. Therefore, we find that the trial court incorrectly granted the motion for summary judgment filed by the Defendants and incorrectly denied the motion for summary judgment filed by Mr. and Mrs. McDowell.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed. The Motion for Summary Judgment filed by the Plaintiffs/Appellants, Ronald Joseph McDowell and Anna Martha McDowell is granted; the Motion for Summary Judgment filed by the Defendants/Appellees, Primeaux Landz, LLC, Harley Ronald Hebert, and Debra Ann Billedeaux Hebert, is denied. All costs of this appeal are assessed against the Defendants/Appellees, Primeaux Landz, LLC, Harley Ronald Hebert, and Debra Ann Billedeaux Hebert.

**REVERSED AND RENDERED.**